IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TDP Holdings, Inc., et al.,                  Case No. 3:08CV492

         Plaintiffs

     v.                                              ORDER

Apria Healthcare, Inc.,

         Defendant

This is a contract case in which the plaintiffs, former owners of a healthcare equipment and services business in the Toledo, Ohio, area, claim that the defendant Apria Healthcare, Inc. [Apria] has failed to make a final/third[1] payment of $1,000,000 of the agreed purchase price of $15,504,000. Plaintiffs-sellers sue to recover that balance. Apria countersues for attorneys' fees under the sale contract.

The parties entered into an Asset Purchase Agreement [APA] on June 3, 2005. Shortly prior to closing, the parties learned that one of the plaintiffs' major customers, Paramount Health Care, had terminated its contract with the plaintiffs.

---

[1] The parties termed the final installment of the purchase price the "Third Payment." I, therefore, refer to this payment as "final/third."

In light of that development, the parties negotiated a provision whereby Apria could reduce the final/third $1,000,000 payment if the first year's revenue from the seller's business was less than $13,100,000. The offset agreement became § 8.6.2(b) of the APA:

> Buyer, Sellers, and the Owner agree that: (i) if the net revenue realized by Buyer with respect to the Business during Buyer's first twelve months of ownership of the Business (the "First Year Revenue") is equal to or greater than $13.1 million (the "Baseline Revenue"), Buyer shall have no right to offset any amounts from the Third Payment pursuant to this Section 8.6.2(b); and (ii) if the First Year Revenue is less than the Baseline Revenue, Buyer shall have the right to offset against the Third Payment, on a dollar-for-dollar basis, up to the full amount of the Third Payment, the amount by which the Baseline Revenue exceeds the First Year Revenue.

Section 1.1 of the APA defines the term "Business:"

> "Business" means Sellers' business involving the marketing, advertising, sale, lease, rental, distribution or other provision of [specified] medical equipment, products, supplies and services to patients and customers in the Territory . . . .

Section 1.1 also defines "Territory:"

> "Territory" means the State of Ohio and a radius of one hundred fifty (150) miles from each branch location of the business.

The first year, for purposes of determining the revenue from the seller's business, began June 1, 2005, and ended May 31, 2006. With reference to the timing of the payment, § 2.4.3 of the APA stated:

> **Third Payment.** No later than twelve months following the Closing Date (subject to a reasonable extension of such time (not in any case to exceed thirty days) if required to determine the First Year Revenue as contemplated by Section 8.6.2(b), Buyer shall deliver to Sellers, or as otherwise directed by Sellers in writing, in immediately available funds, an amount equal to One Million Dollars ($1,000,000) (the "**Third Payment**"), subject to reduction pursuant to Section 8.6.

Apria notified the plaintiffs on August 8, 2006, that it would not be paying any part of the $1,000,000 final/third payment. That communication stated that Apria had offset the entirety of the final/third payment under § 8.6.2(b) of the APA.

2

This suit ensued. Pending are counter-motions for summary judgment [Docs. 34, 35]. For the reasons that follow, I deny plaintiffs' motion, grant defendant's motion in part and deny it in part.

## Discussion

There are two principal issues in this case: 1) what is the basis under § 8.6.2(b) for determining the revenue attributable to the seller's business during the pertinent one-year period; and 2) whether, in light of that basis, Apria properly offset part or all of the final/third $1,000,000 payment.

### 1. Basis for Computing Revenue

Apria contends that revenue generated solely from the business it purchased from plaintiffs is the proper benchmark for computing the first year's revenue under § 8.6.2(b). Plaintiffs assert that all revenue generated by Apria, including revenue generated from continuation of the operations that Apria had previously conducted in the "Territory" is to be counted against the target figure of $13,100,000.

Apria's total revenue, when including all of its operations, both from the customers it already had and those acquired *via* the purchase from plaintiffs, exceeded $13,100,000. Thus, if plaintiffs' definition of the basis for computing the year's revenue is correct, it is entitled to the unpaid $1,000,000 final/third payment.

Plaintiffs are, however, not correct.

The APA specifically defined the term "Business" to be the Sellers' business. Section 8.6.2(b) refers to "revenue realized by Buyer with respect to the Business" – the plaintiffs' business.

3

The natural reading and plain meaning of these terms is that only the revenue generated by the sales and other services through the operations previously conducted by the plaintiffs was to be counted in determining whether total revenue had reached $13,100,000.

In addition to the operative words, § 8.6.2(b) gives the background to the offset. It notes, *inter alia*, that: "the Paramount relationship has historically provided a material amount of the revenues of each Seller;" Paramount had declined to consent to a continuation of its relationship with the plaintiffs' company; and, on June 1, 2005, Paramount had terminated that relationship. Further, according to § 8.6.2(b), though Paramount had proposed other contractual relationships with Apria, no agreement had been reached, "and there is no assurance that any mutually acceptable arrangement will be arrived at in the future."

It is clear that, rather than allowing this development to torpedo the transaction, the parties promptly negotiated the offset agreement. Had Paramount not abruptly terminated its contract with the plaintiffs, no reason would have existed to include the offset.

Withholding, and agreeing to permit withholding of part of the purchase price was an understandable approach. Given the exigencies of wanting to continue with and consummate the transaction, which closed five days after the termination by Paramount, the offset provision was both expedient and easily understood.

There is, in contrast, no sensible basis for concluding that the parties, when confronted by an unanticipated, but suddenly certain reduction in the amount of plaintiffs' business, would lump the revenue from Apria's existing business and that from plaintiffs' business into the $13,100,000 figure. In essence, the parties agreed that, if Apria did not make what it theretofore had anticipated in light of past performance, the final cost to it of its purchase would be reduced per the stated

4

formula. This was not differential calculus; it was, rather, guesswork to which the parties agreed to keep the deal afloat and moving forward.

Plaintiffs make much of the defendant's use in its initial brief of the terms "Existing Business" and "Acquired Business" to describe and differentiate between revenue generated from Apria's pre-purchase business and the revenue generated as a result of having bought plaintiffs' business. While plaintiffs correctly assert that those terms do not appear in the APA, that does not matter. Apria does not contend that they are to be found in the APA; it used those terms, rather, simply as short-hand descriptors of the difference between what should be deemed generated by its continued operations and the business purchased from plaintiffs.

I find no merit in plaintiffs' other arguments about the triggering of the offset provision. That plaintiffs did not request an extension of the final/third payment's due date and Apria waited about nine weeks after the deadline to tell plaintiffs formally there would be no final/third payment are of no significance whatsoever.

The APA set a deadline for payment. It did not set a deadline for notice of non-payment. Indeed, to the extent that plaintiffs were entitled to or needed notice of nonpayment, they had such notice when the deadline came, but no check had arrived.

Plaintiffs can, moreover, point to no adverse consequences from the delay between non-payment and formal notice to them that the payment would not be forthcoming.

I conclude, accordingly, that under § 8.6.2(b), revenue from the operations and activities of the business entity sold by plaintiffs to Apria had to reach $13,100,000 to avoid any set off against the final/third $1,000,000 payment. Apria's contentions about the basis for determining whether the offset was triggered is correct.

### 2. Computation of the Amount of Offset, if Any

Apria contends that its computation of revenue generated from plaintiffs' business is correct, and that such revenue was more than $1,000,000 and less than $13,100,000.

Plaintiffs disagree. They contend that Apria limited its calculations to three Toledo-area branch stores. In view of the definition of the term "Territory" in the APA, plaintiffs argue that revenue generated in the State of Ohio and a radius of one hundred fifty [150] miles from each branch location of the business must also be credited against the $13,100,000.[2]

Plaintiffs are correct. Neither party is entitled to summary judgment with regard to the amount of the offset, if any, that defendant can properly assert. Thus, while Apria wins on the issue of the correct basis for determining an offset, further work is needed to determine whether, once all revenue from the "Territory," and not just the Toledo area, is taken into account.

### 3. Attorneys' Fees

Section 9.12 of the APA provides that, in the event of any action for a breach of the agreement, "the prevailing party shall be entitled to reasonable attorneys' fees, costs and expenses incurred in such Action." Apria seeks judgment in its favor under this provision.

Who the prevailing party is depends on whether additional revenue can be attributed to the business formerly owned by the plaintiffs. If so, and if that revenue gets the total over $13,100,000, plaintiffs will appear to be the prevailing party. If not, and if there is an offset, Apria will appear to be the prevailing party.

---

[2] Plaintiffs claim that Apria's miscomputation of the total revenue generated by their former business estops Apria from claiming any offset whatsoever. I agree with Apria that plaintiffs have not shown that they have relied to their detriment on any misrepresentation. No estoppel comes into play in this case.

For now, neither party can be said to have prevailed. Apria's motion for judgment now for its fees will be denied.

## Conclusion

It is, accordingly

ORDERED THAT:

1. Plaintiffs' motion for summary judgment [Doc. 35] be, and the same hereby is overruled; and

2. Defendant's motion for summary judgment [Doc. 34] be, and the same hereby is granted with regard to its interpretation of § 8.6.2(b) of the parties Asset Purchase Agreement, denied with regard to its computation of the amount of revenue generated by plaintiffs' business during the year following its sale to defendant, and denied as to attorneys' fees.

3. A status/scheduling conference is set for September 28, 2009 at 3:00 pm.

So ordered.

                                                                            s/James G. Carr
                                                                            James G. Carr
                                                                            Chief Judge